**In re KF DAIRIES, INC., Debtor.**

**COMMITTEE OF UNSECURED CREDITORS, Appellant,**

v.

**COMMODITY CREDIT CORPORATION, Appellee.**

**COMMITTEE OF UNSECURED CREDITORS, Appellant,**

v.

**NATIONAL DAIRY PROMOTION AND RESEARCH BOARD, Appellee.**

Bankruptcy No. LA 86–12940–BR.
BAP Nos. CC–91–2235–OPMe, CC–91–2237–OPMe.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 25, 1992.

Decided Aug. 18, 1992.

Aaron P. Allan, Los Angeles, Cal., for Committee of Unsecured Creditors.

Jan L. Luymes, Los Angeles, Cal., for National Dairy Bd.

## OPINION

Before OLLASON, PERRIS, and MEYERS, Bankruptcy Judges.

OLLASON, Bankruptcy Judge:

The bankruptcy court overruled objections to claims because the allegedly avoidable transfers upon which the objections were based occurred outside the applicable limitations period. These timely appeals followed and we reverse.

## FACTS

Appellee Commodity Credit Corporation in BAP No. CC–91–2235 and Appellee National Dairy Promotion and Research Board in BAP No. CC–91–2237 (hereafter collectively "Appellees") received payment from the debtor on certain antecedent debts after commencement of the case from which these appeals arise. The statute controlling whether those transfers were avoidable is 11 U.S.C. § 549,[1] but no actions under that section were ever commenced. Appellees thereafter filed claims against debtor's estate concerning other unpaid debts.

The Committee of Unsecured Creditors (hereafter "Committee"), appellant in both BAP No. CC–91–2235 and BAP No. CC–91–2237, objected to those claims on the grounds set forth in section 502(d), which provides, in relevant part, that "the court shall disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 549 of this title...." Appellees responded, asserting the time-bar.

11 U.S.C. § 549(a) provides:

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(a) Except as provided in subsection (b) or (c)[2] of this section, the trustee may avoid a transfer of property of the estate—

    (1) that occurs after the commencement of the case; and

    (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

    (B) that is not authorized under this title or by the court.

Subsection (d) provides the limitations defense found in § 549:

    (d) An action or proceeding under this section may not be commenced after the earlier of—

    (1) two years after the date of the transfer sought to be avoided; or

    (2) the time the case is closed or dismissed.

The Committee maintains that because section 502(d) refers to "a transfer avoidable under section ... 549," and because section 549(a) defines avoidable transfers "[e]xcept as provided in subsections (b) or (c) of this section," then subsection (d) plays no role in the definition of "a transfer avoidable under section 549." Appellees submit that a transfer is not "avoidable under section ... 549" if an avoidance action cannot be maintained on account of the time bar. The bankruptcy court agreed with appellees, allowed their claims, and overruled the objections of the Committee.

## QUESTIONS PRESENTED AND STANDARD OF REVIEW

■ We must determine whether an otherwise allowable claim is subject to a section 502(d) objection based on a time-barred section 549 cause of action. The issue turns upon statutory interpretation and is thus a question of law subject to *de novo* review. *In re Wade*, 115 B.R. 222, 225 (9th Cir. BAP 1990); *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991).

**2.** Subsection (b) protects a transfer for value given after commencement of an involuntary case but before the order for relief is entered, and subsection (c) protects a good faith pur-

## DISCUSSION

■ *In re Cushman Bakery*, 526 F.2d 23 (1st Cir.1975), *cert. denied*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976), was the leading case concerning this question under former law, and was consistently followed. Like section 502(d) of the bankruptcy code, section 57(g) of the bankruptcy act compelled disallowance of the claims of creditors who had received and had not returned avoidable transfers. The trustee in *Cushman* objected to certain claims on those grounds despite that no affirmative action to recover the allegedly avoidable payments could be maintained due to passage of the applicable limitations period contained in section 11(e) of the Act.

The circuit court analysis began with the language of the applicable limitations statute:

    The most natural interpretation of this language "institute proceedings ... upon any claim" is that it refers to the institution of a separate action by the trustee which, if the trustee's claim is well-founded, will entitle the trustee to recover on behalf of the estate. A trustee's objection to the allowance of a claim is manifestly not the institution of a proceeding that will entitle the trustee to recover on behalf of the estate.

*Id.* at 35. *Cushman* nevertheless conceded that "institute proceedings ... upon any claim ... could be construed more expansively to include § 57 objections to the allowance of a claim." *Id.* *Cushman* resolved the interpretation issue with reference to the purpose of the bankruptcy act and the nature of the claims allowance process. Collier observed:

    [W]hat hinders allowance is not so much the preference itself as the failure to surrender it. This apparently formalistic distinction is of great practical significance. It reveals the purpose, the meaning and the limited scope of § 57g, which may best be summarized in the words: *"Restoration, not punishment, is the*

chaser of real property for value and without knowledge of the bankruptcy. These subsections have no application to the issue before us.

*object of this law."* ... The Act evidences a natural desire to restore the equality of a distribution disturbed by the illicit preference....

3 *Collier on Bankruptcy* (14th Ed.1977), ¶ 57.19 at 307–08. Claim objections promoted equitable distributions, and were not subject to a specific limitations period because the nature of the process permitted objection litigation to ripen slowly. But if the legal basis for objecting to a claim were time-barred, then the objection was also. *Cushman* thus concluded "that § 11(e)'s time limitation does not apply to objections to the allowance of a claim unless voidable preferences are first surrendered and that the only time limitations on a trustee's ability to present objections to the allowance of a claim are those flowing from the equitable doctrine of laches." *Id.* at 34. *Cushman* was uniformly followed in subsequent Act cases. *E.g., In re Meredosia Harbor & Fleeting Service, Inc.,* 545 F.2d 583 (7th Cir.1976), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977); *In re Supreme Synthetic Dyers, Inc.,* 3 B.R. 189 (Bankr.E.D.N.Y.1980). As explained by the Seventh Circuit in *Meredosia Harbor:*

> Section 11(e) is not applicable here where the trustee filed no suit on behalf of the debtor. Rather the lienholders asserted their claims against the trustee. As the bankruptcy referee observed, Section 11(e) "does not come into play when [the trustee] defends money in his hands from creditors whose claim would be preferential if successful." The trustee's defense was in the nature of recoupment and therefore not barred by Section 11(e).

545 F.2d at 590.

The *Cushman* analysis applies with equal force to the same issues arising under the bankruptcy code. Act section 11(e)'s "institute proceedings ... on any claim" language is not readily distinguishable from the commencement of an "action or proceeding" language in Code section 549(d). Both contemplate an adversary complaint seeking affirmative relief. The legislative history of section 502(d) states that it was derived from Act section 57(g).

H.R. No. 95–595 at 354; S.R. 95–989 at 65, 1978 U.S.C.C.A.N. 5851, 6310. "No changes of law or policy are to be interpreted from changes of language in revision of a statute unless the intent to make a change is clearly expressed." *In re Ehring,* 91 B.R. 897, 900 (9th Cir. BAP 1988) (Meyers, J.), *aff'd,* 900 F.2d 184 (9th Cir. 1990). *See also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 211, 108 S.Ct. 963, 971, 99 L.Ed.2d 169 (1988); *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Congress has expressed no such intent. Accordingly, *In re Mid Atlantic Fund, Inc.,* 60 B.R. 604 (Bankr.S.D.N.Y. 1986) followed the case law decided under the Act. *Id.* at 609–10.

*Mid Atlantic* noted that statutory limitations periods generally have no application to offsetting counterclaims and other matters of defense, as opposed to actions seeking affirmative relief, quoting *Liter v. Hoagland,* 204 S.W.2d 219, 220, 305 Ky. 329, 331 (1947):

> Limitation law is not intended to bar nor smother any *mere defense* of a party so as to compel him to stand dumb and mute while his antagonist bludgeons his head with every weapon in the book of legal, offensive warfare. For, so long as the courts will hear a plaintiff's cause of action, they will also hear a defendant's retort of vindication for the attitude he has assumed....

*In re Mid Atlantic* at 611. *See also* 51 Am.Jur.2d, Limitations of Actions, § 76; 3 Jeremy C. Moore et al., Moore's Federal Practice ¶ 13.11 (2d ed. 1992). *Mid Atlantic* was followed, generally without discussion, by subsequent Code cases. *E.g. Matter of Eye Contact, Inc.,* 97 B.R. 990, 992 (Bankr.W.D.Wis.1989); *In re Coan,* 96 B.R. 828, 831 (Bankr.N.D.Ill.1989); *In re Larsen,* 80 B.R. 784, 791 (Bankr.E.D.Va. 1987).

Appellees cite *In re Marketing Associates of America, Inc.,* 122 B.R. 367 (Bankr. E.D.Mo.1991), in support of the contrary view adopted by the bankruptcy court in the subject case. *Marketing Associates* criticized *Mid Atlantic* and held that a

transfer is simply not avoidable under the plain language of section 502(d) once the time for bringing an avoidance action has expired. *Id.* at 369. Because no action could be commenced, *Marketing Associates* concluded that "there is not and never can be a preferential transfer which is contrary to the purpose of Section 502(d) (as equality of distribution is not threatened). . . ." *Id.* at 370. *Marketing Associates* further maintained that *Mid Atlantic* was led into error by its reliance on *Cushman Bakery* and *Meredosia Harbor,* which involved "the time in which a trustee must object to a claim" rather than "the disallowance of a claim after the time limitation for bringing a preference complaint." *Id.*

In our view, *Marketing Associates'* criticism of *Mid Atlantic* was misplaced. *Mid Atlantic, Cushman Bakery,* and *Meredosia Harbor* all considered an identical issue: whether a time-barred avoidance action may furnish grounds for a claim objection. The characterization of the issue, whether the objection is timely if its legal basis is time-barred as opposed to whether the objection is meritorious if its legal basis is time-barred, is a distinction in semantics, without a difference in effect.

Moreover, the allowance or disallowance of a claim has the same impact on the equality of distribution to creditors regardless of whether the underlying avoidance action is time-barred. A creditor in receipt of an avoidable transfer obtains full payment on that portion of its claim. Allowance of its claim provides a partial distribution on account of other, unpaid debts. Taken together, the avoidable payment and the bankruptcy distribution allow such a creditor to recover a greater portion of its original aggregate claim than other creditors, and at their expense. Because there can be no affirmative recovery by the estate, the disallowance of a claim under section 502(d) ameliorates, but may not

eliminate, the advantage obtained by the avoidable transfer.[3]

We can discern no purpose for section 502(d) if it applied only when the transfer therein contemplated could form the basis of an independent avoidance action seeking affirmative relief from the transferee. An avoidance action would support an objection to claim based on recoupment or set-off without resort to section 502(d). The claim objection would assert that the estate's obligation on the claim should be reduced by the claimant's obligation under the judgment. A determination on the claim would be held in abeyance pending judgment in the avoidance action.

Because the bankruptcy code is concerned chiefly with equality of distribution, *see Begier v. I.R.S.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262, 110 L.Ed.2d 46 (1990), it does not sanction a choice between the equal distribution an action would provide and the less unequal distribution an objection would provide. When both are available to remedy an avoidable transfer, an action yielding affirmative relief should be pursued. If an action is time-barred, an objection yielding partial relief should be pursued. In this manner, the Code achieves the most equal distribution available and remains consistent with ancient common law doctrine concerning the defensive use of time-barred claims.

## CONCLUSION

Section 502(d) operates to disallow claims of transferees who do not surrender their avoidable transfer. It does not compel the surrender, nor permit affirmative relief of any kind. The time-bar language in section 549(d) appears to contemplate application only to adversary proceedings seeking affirmative relief. Application of the time-bar to objections based on section 502(d) would undercut the statutory language, the purpose of the bankruptcy code, and the general rule that statutory time-bars are inapplicable to matters of defense, where

---

**3.** We may assume that the decision is controlled by economic considerations. Whenever a distribution on account of such creditor's original aggregate claims against the debtor's estate would pay more than what was received by an avoidable transfer, the transfer would be surrendered in favor of the distribution. Conversely, when the distribution would pay less, the claim would be foregone in favor of the transfer.

**738**

no affirmative relief is sought. Accordingly, we reverse and remand for adjudication of the Committee's objection.