763 So.2d 1206 (2000)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Appellant,
v.
Lawrence GRUSKY, Appellee.
No. 3D98-1018.
District Court of Appeal of Florida, Third District.
April 19, 2000.
Rehearing Denied August 23, 2000.
Cohen, Berke, Bernstein, Brodie & Kondell and Peter V. Fullerton and Yolanda Cash Jackson, and Douglas H. Stein, Miami, for appellant.
Jack Coe, Miami; Hersch & Talisman and Patrice A. Talisman, Miami, for appellee.
Before COPE and SORONDO, JJ., and NESBITT, Senior Judge.
PER CURIAM.
National Union Fire Insurance Company of Pittsburgh, PA (National Union), appeals from the lower court's final summary judgment entered in favor of Lawrence Grusky (Lawrence).
Elliot Grusky (Elliot) owned and operated Grusky Chiropractic Center, P.A. (the center), with his brother and partner, Lawrence. Elliot signed a promissory note dated January 26, 1990, in which he pledged his stock in the center to Lawrence for an alleged antecedent debt. In June 1994, National Union filed a complaint in New York against Elliot for failure to pay another debt. In July 1995, a New York judgment was entered against Elliot in favor of National Union in the amount of $47,233.11. In September 1995, Elliot defaulted on his loan to Lawrence, who repossessed Elliot's shares. On October 23, 1995, National Union domesticated the New York judgment in Florida.
*1207 In November 1995, one month after transferring his stock to Lawrence, Elliot filed a Chapter 7 bankruptcy petition in U.S. Bankruptcy Court. Both Lawrence and National Union were listed as unsecured creditors. Elliot filed a statement of financial affairs disclosing that after he defaulted on his loan to Lawrence, Lawrence had repossessed Elliot's stock. National Union appeared in bankruptcy court and used the court's subpoena power to compel depositions of Lawrence, Elliot and Wayne Rassner, the escrow agent involved in their loan, to inquire about the repossession. Rassner testified that he did not receive the agreement between Elliot and Lawrence until after September 14, 1995. Fredric Garvett, Elliot's former attorney, averred that he met Elliot in December 1992, and that he drafted the agreement around that time.
National Union urged the bankruptcy trustee, Jeff Beck, to avoid the transfer. The trustee filed an affidavit attesting to the fact that he had reviewed the transfers of shares between Elliot and Lawrence in light of the potential of their avoidance as fraudulent transfers. The trustee elected not to do so, concluding that the unsecured creditors as a whole would not benefit from a challenge.
In November 1996, National Union filed the present action against Lawrence under chapter 726, Florida Statutes, seeking to have the transfer of shares in the center set aside as fraudulent. Lawrence answered, raising affirmative defenses including res judicata, lack of standing, waiver and estoppel, and moved to dismiss the complaint. The trial court denied the motion to dismiss, finding that National Union stated a valid state law cause of action, which it could pursue despite the failure of the bankruptcy trustee to challenge the repossession of the stock.
Lawrence moved for summary judgment based on his affirmative defenses. The trial court heard argument and entered an extensive order granting the motion for summary judgment. Relying on Florida law, the court found that res judicata barred National Union from re-litigating in state court the matters which were or which could have been litigated in the prior bankruptcy proceedings, and that National Union had no standing to bring this case because it was no longer a creditor, as Elliot's debt in the form of an unsecured judgment was discharged in bankruptcy. National Union appeals.
We begin our analysis by observing that the trial court erroneously applied Florida's law of res judicata instead of federal principles of claim preclusion in reaching its conclusions below.[1] In O'Brien v. Federal Trust Bank, F.S.B., 727 So.2d 296, 297 (Fla. 5th DCA 1999), the Fifth District Court of Appeal stated:
Because it must be determined whether O'Brien is barred by res judicata due to prior federal court judgments, federal principles of claim preclusion apply.
See also Dalbon v. Women's Specialty Retailing Group, 674 So.2d 799 (Fla. 4th DCA 1996); Baxas Howell Mobley, Inc. v. BP Oil Co., 630 So.2d 207 (Fla. 3d DCA 1993).
As applied in the federal courts, the doctrine of res judicata "encompasses two different preclusion doctrines: claim preclusion and issue preclusion. Claim preclusion bars the litigation of matters that could have been litigated in an earlier suit, but were not. Issue preclusion, on the other hand, bars the relitigation of matters that were actually litigated and decided in a prior suit." Pelletier v. Zweifel, 921 F.2d 1465 (11th Cir.1991). The present case deals with claim preclusion.

*1208 Claim preclusion bars a plaintiff from bringing a subsequent lawsuit when four requirements are met: "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases."
Id. at 1501 (quoting I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir.1986)). See also In re Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990).
Having reviewed the record before us, we conclude that the cause of action in the present case is not barred by the doctrine of federal claim preclusion. It is clear that in bankruptcy law a party in interest, other than a trustee or debtor-in-possession, can rarely prosecute an estate's cause of action. See In re Prime Motor Inns, Inc., 135 B.R. 917 (Bankr. S.D.Fla.1992); see also Nebraska State Bank v. Jones, 846 F.2d 477 (8th Cir.1988); Clark v. Bank of Bentonville, 308 Ark. 241, 824 S.W.2d 358 (1992). "Even official committees do not have standing to prosecute such actions absent extraordinary circumstances." Prime Motor Inns, 135 B.R. at 919.[2] "The qualified right of a committee to initiate an avoidance action on behalf of the estate may not, however, be extended to individual creditors or shareholders." Id. at 920. See also In re Curry and Sorensen, Inc., 57 B.R. 824, 827 (9th Cir. B.A.P.1986) ("[i]ndividual creditors generally have no remedy to institute such an action except through the trustee or debtor-in-possession"); In re Sinder, 102 B.R. 978, 983 (Bankr.S.D.Ohio 1989)("a search of existing authority has not revealed any decision in which a court was willing to extend such authority to an individual creditor"); 4 Collier on Bankruptcy ¶ 547.21[4](15th ed.1991)("it is clear that individual creditors may not bring suits on their own behalf to avoid preference to other creditors").
As it is clear that the fraudulent transfer action was not litigated in the Bankruptcy Court and could not be litigated there by National Union, we conclude that the fourth requirement for application of the federal claim preclusion doctrine is not present because the "same cause of action [was] not involved in both cases." Pelletier v. Zweifel, 921 F.2d at 1501.
The trial court's second reason for granting summary judgment was that National Union lacked standing "because its debt in the form of an unsecured judgment was discharged in bankruptcy. As only creditors have standing to seek relief under Florida's Uniform Fraudulent Transfer Act, and as National Union is no longer a creditor because of the discharge ... [,]" we disagree.
In Dixon v. Bennett, 72 Md.App. 620, 637, 531 A.2d 1318, 1326 (1987), the Court analyzed this same argument as follows:
The discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes personal liability of the debtor; and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose personal liability on the debtor. 11 U.S.C. § 524 (1978). Section 524(e) expressly provides that the `discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.' § 524(e).
Under § 16 of the Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544, 550 (1898), the limitation of discharge provision restricted *1209 actions to those against co-debtors, guarantors, or other sureties. The language of § 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the personal liability of the debtor.
See also Kathy B. Enters., Inc. v. United States, 779 F.2d 1413 (9th Cir.1986). We emphasize that the present action is brought against Lawrence and not Elliot, the debtor in the bankruptcy proceeding. Section 726.102(4), Florida Statutes (1995), defines "creditor" as "a person who has a claim." Section 726.102(3) defines "claim" as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Even though National Union's claim against Elliot was discharged in bankruptcy, the claim against Lawrence, a third party, was still viable. Under the definitions set forth in the statute, National Union was a creditor for purposes of an action predicated on chapter 726, Florida Statutes.
Reversed and remanded for further proceedings.
NOTES
[1] The lower court applied the four part test set forth in Seaboard Coast Line R.R. Co. v. Industrial Contracting Co., 260 So.2d 860 (Fla. 4th DCA 1972), to determine whether the doctrine of res judicata can be invoked, to-wit: 1) identity in the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the actions; and 4) identity of the quality or capacity of the person for or against whom the claim is made.
[2] These committees have standing to prosecute certain causes of action by implication from sections 1103(c)(5) and 1109(b) of the Bankruptcy Code if the trustee/debtor-in-possession abuses its discretion in not suing. See In re Savino Oil & Heating Co., 91 B.R. 655, 657 (Bankr.E.D.N.Y.1988); In re Philadelphia Light Supply Co., 39 B.R. 51 (Bankr.E.D.Pa. 1984); In re Monsour Medical Center, 5 B.R. 715 (Bankr.W.D.Pa.1980).